**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Prime Success, L.P.,<br><br>Petitioner,<br><br>-against-<br><br>Sinovac Biotech Ltd., 1Globe Capital LLC, OrbiMed Advisors LLC, OrbiMed Capital LLC, OrbiMed Partners Master Fund Ltd.,<br><br>Respondents,<br><br>-and-<br><br>Equiniti Trust Company LLC, Cede & Co., and the Depository Trust Company,<br><br>Relief Respondents. | Case No.: 1:25-cv-04989-RA |

**REPLY IN SUPPORT OF PETITIONER PRIME SUCCESS L.P.'S**
**PETITION FOR EMERGENCY INJUNCTIVE RELIEF IN AID OF ARBITRATION**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. THIS COURT HAS A DUTY TO PRESERVE THE STATUS QUO ........ 2

II. INJUNCTIVE RELIEF IS REQUIRED TO MAINTAIN THE STATUS QUO ........ 4

A. Petitioner Shows The Relevant Likelihood Of Success ........ 4

B. Petitioner Will Be Irreparably Harmed Absent This Court's Action ........ 6

C. The Balance Of Equities And The Public Interest Favor Petitioner ........ 8

D. An Anti-Suit Injunction Should Issue ........ 8

III. THERE IS NO BASIS FOR FORUM NON CONVENIENS DISMISSAL OR STAY ........ 10

CONCLUSION ........ 12

**TABLE OF AUTHORITIES**

**Page(s)**

*Alghanim v. Alghanim*,
828 F. Supp. 2d 636 (S.D.N.Y. 2011) ........ 11

*Bank Leumi USA v. Ehrlich*,
2015 WL 12591663 (S.D.N.Y. 2015) ........ 9

*Bank of Credit & Com. Int'l (Overseas) Ltd. v. State Bank of Pakistan*,
273 F.3d 241 (2d Cir. 2001) ........ 12

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
910 F.2d 1049 (2d Cir. 1990) ........ 1, 2, 6

*Borden, Inc. v. Meiji Milk Prods. Co.*,
919 F.2d 822 (2d Cir. 1990) ........ 2, 3, 9, 11, 12

*Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*,
638 F.3d 150 (2d Cir. 2011) ........ 3

*Brkic v. Dumbo Moving & Storage, Inc*.,
2023 WL 1069889 (S.D.N.Y. 2023) ........ 4

*Carr v. Citibank, N.A.*,
2015 WL 9598797 (S.D.N.Y. 2015) ........ 4

*Cathay Cap. Holdings II, LP v. Zheng*,
2021 WL 3661146 (D. Conn. 2021) ........ 3

*Clark v. Pattern Analysis & Recognition Corp.*,
384 N.Y.S.2d 660 (1976) ........ 7

*Credit Suisse Sec. (USA) LLC v. Ebling*,
2006 WL 3457693 (S.D.N.Y. 2006) ........ 6

*Cybernaut Cap. Mgmt. Ltd. v. Partners Grp. Access Secondary 2008, L.P.*,
2013 WL 4413754 (S.D.N.Y. 2013) ........ 8

*Dandong v. Pinnacle Performance Ltd.*,
2011 WL 5170293 (S.D.N.Y. 2011) ........ 10

*Denihan v. Denihan*,
119 A.D.2d 114 (1st Dep't 1986) ........ 4

*Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*,
2019 WL 5257995 (S.D.N.Y. 2019) ........ 4, 9

*Eastman Kodak v. Asian Optical Co*.,
118 F. Supp. 3d 581 (S.D.N.Y. 2015)....................9

*Emirates Int'l Inv. Co. v. ECP Mena Growth Fund, LLC*,
2012 WL 2198436 (S.D.N.Y. 2012)....................7

*Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*,
2024 WL 1743109 (S.D.N.Y. 2024)....................4, 9

*Genius Grp. v. LZG Int'l, Inc.*,
2025 WL 815346 (S.D.N.Y. 2025)....................6

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22 (2d Cir. 2010)....................3

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001)....................11

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
500 F.3d 111 (2d Cir. 2007)....................9

*Krauth v. Exec. Telecard, Ltd.*,
890 F. Supp. 269 (S.D.N.Y. 1995)....................7

*Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*,
2013 WL 1245549 (S.D.N.Y. 2013)....................12

*LG Elecs., Inc. v. Wi-LAN USA, Inc.*,
2014 WL 3610796 (S.D.N.Y. 2014)....................3

*Mobile Real Est., LLC v. NewPoint Media Grp., LLC*,
460 F. Supp. 3d 457 (S.D.N.Y. 2020)....................5

*Moise v. Fam. Dollar Stores of New York, Inc.*,
2017 WL 2378193 (S.D.N.Y. 2017)....................4

*Motorola Credit Corp. v. Uzan*,
2003 WL 56998 (S.D.N.Y. 2003)....................9

*Motown Rec. Co., L.P. v. iMesh.Com, Inc.*,
2004 WL 503720 (S.D.N.Y. 2004)....................11

*NuMSP, LLC v. St. Etienne*,
462 F. Supp. 3d 330 (S.D.N.Y. 2020)....................3

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004)....................1, 2, 8, 9, 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) .......... 4

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) .......... 4

*Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Constr. Co.*, 598 F.Supp. 754 (S.D.N.Y. 1984) .......... 11

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115 (2d Cir. 2003) .......... 3

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 2013 WL 2050914 (S.D.N.Y. 2013) .......... 10

*Storm LLC v. Telenor Mobile Commc'ns AS*, 2006 WL 3735657 (S.D.N.Y. 2006) .......... 5, 8

*Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, 2003 WL 22909149 (S.D.N.Y. 2003) .......... 7

*Thales Avionics, Inc. v. L3 Techs., Inc.*, 719 F. Supp. 3d 337 (S.D.N.Y. 2024) .......... 8

*Unilever Acquisition Corp v. Richardson-Vicks, Inc.*, 618 F. Supp. 407 (S.D.N.Y. 1985) .......... 7

*Venconsul N.V. v. Tim Int'l N.V.*, 2003 WL 21804833 (S.D.N.Y. 2003) .......... 7

*WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390 (S.D.N.Y. 2018) .......... 8

**Rules / Statutes**

9 U.S.C. § 201 .......... 2

9 U.S.C. § 202 .......... 1

9 U.S.C. § 203 .......... 2

9 U.S.C. § 204 .......... 2

9 U.S.C. § 206 .......... 2

CPLR 7501 .......... 4

HKIAC 2024 Arb. R. 19.1 .......... 3

IBCA § 81 .....................................................................................................................5

## INTRODUCTION

Although Sinovac's history is complicated, the question before this Court is straightforward: should this Court preserve the status quo pending arbitration where Respondents (i) do not rebut the arbitrability of this dispute, (ii) do not deny their intent to alter the status quo by depriving Petitioner of its rights while the arbitration is pending, and (iii) ran to the courts of Antigua *after* Petitioner demanded arbitration, in an improper attempt to obtain relief in the wrong forum? The answer is "yes." This Court should act.

As Respondents concede, this Court has subject matter and personal jurisdiction, and that answers their own question about why this Court should act in a dispute involving foreign parties and events: because that is what Congress—and all states adopting the New York Convention (including Antigua and Hong Kong)—have promised. In fact, it is a prerequisite for a claim under the Convention that the dispute *not* be domestic. *See* 9 U.S.C. § 202. As the Second Circuit emphasized in affirming an anti-suit injunction, the federal policy favoring arbitration has "particular force in international disputes." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004). And a "district court *must* ensure that the parties get what they bargained for—a meaningful arbitration of the dispute"—by granting preliminary relief in aid of arbitration where appropriate, lest the arbitration "become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1053 (2d Cir. 1990) (emphasis added).

This Court should act to ensure that Respondents do not irrevocably alter the status quo before the arbitration concludes. Respondents' assertions that their intended changes to the status quo may not be irrevocable are hollow. Respondents ask this Court to force Petitioner to litigate arbitrable issues in the wrong forum, deny Petitioner its voting rights, and permit Respondents to

disperse hundreds of millions of dollars to which Petitioner is entitled to other shareholders. This is classic irreparable harm. This dispute is arbitrable, and the status quo should be maintained *pending resolution of the merits* in the proper forum. Respondents' arguments on the merits are irrelevant—and wrong in any event.[1]

Petitioner's requested relief is authorized by controlling law and necessary to prevent irreparable harm. Petitioner urges this Court to grant it.

## ARGUMENT

### I. THIS COURT HAS A DUTY TO PRESERVE THE STATUS QUO

The undisputed status quo is that Petitioner holds registered shares in Sinovac and rights to vote and share dividends, as Petitioner has for seven years, since first investing over $43 million in Sinovac. This Court has both the power and the duty to preserve that status quo under binding treaty obligations that attach particular importance to safeguarding international arbitrations. Respondents cannot show this dispute belongs anywhere but arbitration.

Even with a domestic arbitration, this Court has a duty to preserve the status quo to maintain a *meaningful* right to arbitrate. *See, e.g., Blumenthal*, 910 F.2d at 1053. And this country's pro-arbitration policies are at their apex when it comes to international arbitration, *Paramedics*, 369 F.3d at 654, which is why Congress enacted stand-alone laws permitting enforcement of international arbitrations specifically, *see* 9 U.S.C. §§ 201-204, 206; *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990). The United States, Antigua, and Hong Kong all signed the New York Convention, which "forbids the courts of a contracting state," like

[1] Respondents have *not* agreed to escrow Petitioner's dividends pending the arbitration. They refused.

Antigua, "from entertaining a suit which violates an agreement to arbitrate." *Borden*, 919 F.2d at 826.

Respondents never seriously dispute that the validity issue is arbitrable, nor could they. Petitioner must only make "a prima facie initial showing that an agreement to arbitrate exist[s]." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 348 (S.D.N.Y. 2020) (Abrams, J.). That "does not require [Petitioner] to show the 'agreement would be enforceable, merely that one existed.'" *Id.* Petitioner makes that showing. The SPA provides that "*[a]ny* dispute, claim, controversy or difference arising out of or in connection with" the SPA must be arbitrated "in accordance with the HKIAC" rules. Dkt. 5-1, SPA § 6.10(b). That is "clear and unmistakable" proof that arbitrators must decide the initial question of arbitrability. *Bechtel do Brasil Construcoes Ltda. v. UEG Araucaria Ltda.*, 638 F.3d 150, 157 (2d Cir. 2011).

The parties also expressly incorporated the HKIAC rules, requiring arbitrability itself to be arbitrated. *See* HKIAC Rule 19.1. That bargained-for delegation must be enforced. *LG Elecs., Inc. v. Wi-LAN USA, Inc.*, 2014 WL 3610796, at *6–7 (S.D.N.Y. 2014) (Abrams, J.) ("issues of arbitrability were delegated to the arbitrator" where clause invoked JAMS Rules). The HKIAC rules "give[] arbitrators the authority to rule on questions of their own jurisdiction," and invoking those rules "evinces the parties' intent to arbitrate arbitrability." *Cathay Cap. Holdings II, LP v. Zheng*, 2021 WL 3661146, at *4 (D. Conn. 2021) (citing HKIAC Rule 19); *see also Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121–22, 125 (2d Cir. 2003) (selecting ICC Rules is clear evidence of delegation).

Given Petitioner's showing, the burden flips to Respondents to challenge the agreement to arbitrate—a burden they cannot meet. Under federal law, the agreement to arbitrate "is severable from the remainder of the contract, and unless the challenge is to ***the arbitration clause itself***," the

entire dispute must go to arbitration. *Moise v. Fam. Dollar Stores of N.Y, Inc.*, 2017 WL 2378193, at *4 (S.D.N.Y. 2017) (cleaned up) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967)). Challenging the broader agreement is irrelevant, and the court must "leav[e] any challenge to the validity of the agreement as a whole for the arbitrator." *Id.* (quoting *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 71-72 (2010)).

Yet Respondents' only argument is about authorization for the whole SPA, a validity argument that is non-responsive and irrelevant here. With no specific challenge to Section 6.10(b), the dispute belongs in arbitration. *Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, 2024 WL 1743109, at *4 (S.D.N.Y. 2024) (claim "that Agreement was terminated … is an issue to be determined in arbitration"); *Brkic v. Dumbo Moving & Storage, Inc*., 2023 WL 1069889, at *2 (S.D.N.Y. 2023) (a "dispute over [] validity" must be decided in arbitration); *Carr v. Citibank, N.A.*, 2015 WL 9598797, at *2 (S.D.N.Y. 2015) (formation challenge must go to arbitration).

## II. INJUNCTIVE RELIEF IS REQUIRED TO MAINTAIN THE STATUS QUO

### A. Petitioner Shows The Relevant Likelihood Of Success

The only question before this Court is "whether [Petitioner] is likely to succeed on its claim that [Respondents' Antigua lawsuit] ran afoul of the [arbitration agreement]." *Forbes*, 2024 WL 1743109, at *7; *Deutsche Mexico Holdings S.a.r.l. v. Accendo Banco, S.A.*, 2019 WL 5257995, at *6 (S.D.N.Y. 2019) (likelihood of success is not the "underlying contract disputes"); *see also* N.Y. CPLR 7501 (court "shall not consider ... or otherwise pass upon the merits of the dispute"); *Denihan v. Denihan*, 119 A.D.2d 144, 147–49 (1st Dep't 1986) (court must not evaluate the underlying dispute now). Thus, Respondents' merits arguments miss the mark. Respondents do

not challenge the agreement ***to arbitrate***, and therefore this Court must enforce it—that's the relevant likelihood of success.[2]

Respondents also fail to dispute Petitioner's showing as to what rights it currently holds—i.e., the nature of the status quo that should be maintained. *See* Br. 13-14. For the past seven years, the status quo has been that Prime Success is a shareholder in consideration of its substantial investment. Respondents wish to alter the status quo to entrench their power, and have asked the courts of Antigua to do so immediately, but they do not dispute what the status quo is. *Id.*

Last, although the wrong question, Petitioner is also likely to succeed on the ultimate merits in arbitration. The SPA was executed by Sinovac's President and CEO, Dr. Yin, who has *continuously* served in that role from 2003 through today. Under Sinovac's Articles of Incorporation, his acts "bind the Corporation as if the said act[s] had been approved by the Board of Directors." Dkt. 5-7, Art. IV. Respondents blithely ask the Court to "ignore" that fact, Opp. 15 n.7, but they offer no basis for doing so. Moreover, even if Dr. Yin had signed the SPA as a director (he didn't), the law is clear as to Sinovac that "An act of a director or officer is valid notwithstanding any irregularity in his election or appointment or any defect in his qualification." IBCA § 81. Acts of officers must bind companies for businesses to function. Sinovac cannot hope to unwind Petitioner's $50 million investment seven years later, after getting rich by using that money to develop the world's leading COVID-19 vaccine.

Respondents' claim that the Privy Council invalidated Petitioner's investment agreement is simply false. The exact opposite is true: that court did not address Petitioner or the SPA at all

---

[2] OrbiMed and 1Globe can be bound to arbitrate here. *See, e.g., Storm LLC v. Telenor Mobile Commc'ns AS*, 2006 WL 3735657, at *13–14 (S.D.N.Y. 2006) (issuing antisuit injunction against non-signatories); *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 478 (S.D.N.Y. 2020) ("there is a sufficient relationship between" non-signatories "to delegate this question to the arbitrator.").

because after 1Globe *lost* on its claim seeking to void all actions by the old Board, it chose not to appeal on that issue. Br. 7–8. Respondents must know that the Privy Council's ruling did not undermine all actions by the old Board, for they have not contested ***any*** other corporate action over the past seven years, such as: (1) the grant of a 15% equity stake to another investor in 2020[3]; (2) a partnership with an Indonesian company to provide 280 million doses of CoronaVac[4]; (3) Sinovac's Turkish or Colombian partnerships[5]; or (4) Sinovac's opening of a new facility in Beijing or signing a major CoronaVac sales agreement.[6] Respondents have targeted ***only*** the investments by Prime Success and Vivo. Petitioner will prove in arbitration that this is a targeted, self-serving attack by controlling shareholders seeking to entrench their plenary control and seize the benefits of Petitioner's valuable investments for themselves.

**B. Petitioner Will Be Irreparably Harmed Absent This Court's Action**

"A district court must ensure that the parties get what they bargained for—a meaningful arbitration of the dispute." *Blumenthal*, 910 F.2d at 1053. Unless this Court acts, "the harm that Petitioner seeks to address via arbitration will occur before the arbitrator can render a decision, and Petitioner will lose its right to meaningfully resolve these ... disputes via arbitration." *Credit Suisse Sec. (USA) LLC v. Ebling*, 2006 WL 3457693, at *3 (S.D.N.Y. 2006). Loss of the right to arbitrate this dispute "is itself an irreparable injury" to Petitioner. *Genius Grp. v. LZG Int'l, Inc.*, 2025 WL 815346, at *5 (S.D.N.Y. 2025).

---

[3] https://www.sinovac.com/en-us/news/id-2849.

[4] https://www.sinovac.com/en-us/news/id-3251.

[5] https://www.sinovac.com/en-us/news/SINOVAC_Launches_Its_First_Overseas_Jointly_Invested_Vaccine_Production_Plant_in_T%C3%BCrkiye.

[6] *See* https://www.sinovac.com/en-us/news/id-3272.

Respondents purport to distinguish these cases (at 12 n.2) as "involv[ing] situations where the underlying harm could not be remedied by arbitrators"—but the same is true here, for the arbitral tribunal has not been impaneled. Absent prompt relief, Respondents will deprive Petitioner of its shareholder rights before the arbitration is completed. Such a loss is quintessential, classic irreparable harm. *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, 2003 WL 22909149, at *4 (S.D.N.Y. 2003); *Clark v. Pattern Analysis & Recognition Corp.,* 384 N.Y.S.2d 660, 661 (1976).

In particular, the loss of the right to vote is irreparable. *E.g.*, *Krauth v. Exec. Telecard, Ltd.*, 890 F. Supp. 269, 287 (S.D.N.Y. 1995) (loss of "free exercise of shareholders' voting rights" is irreparable harm); *Unilever Acquisition Corp v. Richardson-Vicks, Inc.*, 618 F. Supp. 407, 410 (S.D.N.Y. 1985) (similar). The idea that a shareholder vote from which Petitioner is wrongfully excluded could be "re-calculat[ed]" at some later point is hollow comfort. In fact, when 1Globe complained that its votes in 2018 should have been counted, it told the courts in Antigua that there was no way to conduct another vote. Dkt. 5-8.

As for the dividends, Respondents' claims are misleading. Respondents *refused* to place Petitioner's portion of the dividends into an escrow account that would safeguard them. Even now, Respondents claim (at 10) only that the dividends are with Equiniti, their paying agent, pending the resolution of proceedings *in Antigua*—not Hong Kong. That is not adequate; if hundreds of millions of dollars belonging to Prime Success are paid to third parties, it may be impossible for Petitioner to recover that money later.[7]

---

[7] Respondents cite an old announcement that Sinovac would "retain[]" Petitioner's dividends. Opp. 13 (citing Dkt. 5-14). Following that announcement, Petitioner demanded—several times—that Sinovac escrow its dividends pending resolution of the parties' claims. *See* Dkt. 5-26. Sinovac refused.

**C. The Balance Of Equities And The Public Interest Favor Petitioner**

The balance of the equities and public interest strongly favor relief. *E.g.*, *Thales Avionics, Inc. v. L3 Techs., Inc.*, 719 F. Supp. 3d 337, 349 (S.D.N.Y. 2024) (status quo injunction "further[s] 'the well-established federal public policy in favor of arbitration'"); *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009). Permitting the later Antigua action "to evade [the] arbitration," would "threaten [the] strong public policy … of [this] forum." *Paramedics*, 369 F.3d at 654. Respondents' contrary arguments are meritless.

*First*, although Respondents speculate about inconsistent rulings, that will not happen if this Court grants Petitioner relief. *Infra* II.D. *Second*, the Antiguan courts, as signatories to the Convention, have no authority to proceed, *supra* I, and public policy favors enforcement of the Convention, *infra* II.D. *Third*, Respondents' unclean hands arguments ring hollow given that it is Respondents and their allies—not Petitioner—who have illegally used self-help, including a pattern of criminal conduct, to gain control over Sinovac. Pet ¶¶ 43–44. Indeed, one of 1Globe's installed directors of Sinovac is currently in a Chinese jail cell for that conduct. *Id.* ¶ 12.

**D. An Anti-Suit Injunction Should Issue**

Finally, an anti-suit injunction is warranted and necessary.

*First*, Respondents plainly commenced the Second Antigua Litigation and requested emergency interim relief there to sidestep the Hong Kong arbitration and render it ineffectual. That distinguishes all Respondents' cases that denied an anti-suit injunction. *Cybernaut Cap. Mgmt. Ltd. v. Partners Grp. Access Secondary 2008, L.P.*, 2013 WL 4413754, at *4 (S.D.N.Y. 2013) ("Partners Group has made no effort to ... sidestep arbitration."); *CDEEE*, 2005 WL

1705080, at *9 (S.D.N.Y. 2005) (foreign action was not "interfering with" arbitration); *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018).[8]

*Second*, this is the exact scenario where a court bound by the Convention must act. "The Convention forbids [its] courts … from entertaining a suit which violates an agreement to arbitrate," *Borden*, 919 F.2d at 826, and thus an anti-suit injunction is warranted where a foreign action is filed as "a tactic to evade arbitration," *Paramedics*, 369 F.3d at 654. Because Antigua is a signatory to the Convention, international comity *supports* an injunction. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 125 (2d Cir. 2007) (comity requires protecting Convention regime).

*Third*, the Antiguan action is sufficiently similar for an injunction. The parties to both actions "need not be identical." *Eastman Kodak v. Asian Optical Co*., 118 F. Supp. 3d 581, 587 (S.D.N.Y. 2015); *see Forbes*, 2024 WL 1743109, at *2 n.1. What matters is that the enjoined parties are in the foreign proceeding. *Bank Leumi USA v. Ehrlich*, 2015 WL 12591663, at *4 (S.D.N.Y. 2015); *Eastman Kodak*, 118 F. Supp. 3d at 587. Here they are; the "real parties in interest" to this dispute are the same as in Antigua, so the addition of Equiniti as a Relief Respondent here is of no moment. *Motorola Credit Corp. v. Uzan*, 2003 WL 56998, at *2 (S.D.N.Y. 2003); *see also Deutsche Mexico Holdings S.a.r.l v. Accendo Banco, S.A.*, 2019 WL 5257995, at *5 (S.D.N.Y. 2019) (same parties factor met where enjoining additional party from taking certain action would be "redundant" to enjoining "[p]etitioners … from taking [the same] action"). It is not required that "the two actions be identical." *Bank Leumi*, 2015 WL 12591663, at *4. It is sufficient that "resolution of this action would be dispositive of that portion of the

[8] Respondents' other cases (at 21–22) do not involve arbitration or forum-selection clauses at all; they are irrelevant.

[foreign] [a]ction [Petitioner] seeks to enjoin." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 2013 WL 2050914, at *2 (S.D.N.Y. 2013).

*Finally*, the remaining factors favor an injunction for all the reasons in Petitioners' Opening Brief, and Respondents' cases are inapposite. Respondents depend on a specious claim (at 21–22) that the Arbitration is "proceeding in parallel" to the Second Antigua Action. But Respondents have moved for emergency relief in Antigua to front-run the arbitration which Sinovac says it will seek to stay. Opp. 16. Respondents cannot pretend they are doing anything other than trying to evade the Arbitration—and that is exactly when an antisuit injunction should issue. *Paramedics*, 369 F.3d at 654.

## III. THERE IS NO BASIS FOR FORUM NON CONVENIENS DISMISSAL OR STAY

While conceding that this Court has both subject matter and personal jurisdiction, Respondents invoke the doctrine of forum non conveniens ("FNC"), a "discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Dandong v. Pinnacle Performance Ltd.*, 2011 WL 5170293, at *5 (S.D.N.Y. 2011). But that doctrine does not fit the facts and Respondents never address the governing factors, which are not satisfied.

*First*, Respondents concede the strong connections to New York as alleged in the Petition. Opp. 7, 10. This Court should not decline to act where it is specifically empowered by federal statute to do so, and where disputed property rights (the dividends and registered shares) and controlling actors (two of the four directors) and their agents (including the paying agent) are in New York, in a dispute related to securities listed in New York. *Rogers, Burgun, Shahine & Deschler, Inc. v. Dongsan Constr. Co.*, 598 F.Supp. 754, 758 (S.D.N.Y. 1984) (Paris arbitration could be enforced in Korean court, but this Court must protect its own jurisdiction over liquid

assets in New York). There has been no "forum-shopping" by Petitioner. *Cf. Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). Rather, it is Respondents who have engaged in forum-shopping by suing in Antigua to try to circumvent the prior arbitration.

*Second*, Respondents do not cite *a single case* granting FNC to evade an international arbitration. In *Borden*, the Second Circuit affirmed a FNC dismissal in favor of Japanese courts that were *protecting* an international arbitration. *Id.* at 827–29. Indeed, the Second Circuit conditioned dismissal on Japanese courts granting an injunction in aid of arbitration within 60 days. *Id*. But here the alternative forum Respondents identify, Antigua, was selected to *avoid* arbitration. Respondents cite no authority dismissing a petition for injunctive relief *in aid of arbitration* in favor of litigation in a forum selected to *avoid arbitration*.

*Third*, Respondents have in any event "failed in their burden" to show that Antiguan "courts have enforced or can enforce" injunctions in aid of arbitration—the relief sought here. *Motown Rec. Co., L.P. v. iMesh.Com, Inc.*, 2004 WL 503720, at *6 (S.D.N.Y. 2004); *Donnelly v. Anand*, 2022 WL 4385901, at *9 (S.D.N.Y. 2022). Prime Success's motion for a stay in Antigua is not (*contra* Opp. 25–26) the "same relief" sought here, as even if successful, that stay motion would not enjoin Respondents from using self-help to deprive Prime Success of its dividend and voting rights—as they have threatened to do. And a proceeding on the merits in Antigua is not an adequate substitute for international arbitration. *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 653 (S.D.N.Y. 2011).

*Fourth*, Respondents entirely ignore the *Gilbert* factors, which must be considered and favor jurisdiction. *See Borden*, 919 F.2d at 828; *Leeward Const. Co. v. Am. Univ. of Antigua-Coll. of Med.*, 2013 WL 1245549, at *1 & n.8 (S.D.N.Y. 2013). That is a waiver.

*Last*, a conditional dismissal like in *Borden* would "fail[] significantly to protect" and "be highly prejudicial" to Petitioner, given the imminent, irreparable harm that Petitioner will soon encounter absent relief. *Bank of Credit & Com. Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 248 (2d Cir. 2001).

## CONCLUSION

For all these reasons, the Court should grant the requested injunctive relief.

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Dated: New York, New York
June 17, 2025

By: *K. McKenzie Anderson*
K. McKenzie Anderson
Michael Swartz
Rachel E. Epstein
Morgan L. Anastasio (admission pending)
295 5th Avenue
New York, New York 10016-7103
Tel.: (212) 849-7000
mckenzieanderson@quinnemanuel.com
michaelswartz@quinnemanuel.com
rachelepstein@quinnemanuel.com
morgananastasio@quinnemanuel.com

B. Dylan Proctor (*pro hac vice*)
Zach Meeker (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Tel.: (213) 443-3000
dylanproctor@quinnemanuel.com
zachmeeker@quinnemanuel.com

Sarah Heaton Concannon
Gregg Badichek
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I Street NW
Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
sarahconcannon@quinnemanuel.com
greggbadichek@quinnemanuel.com

*Attorneys for Petitioner Prime Success, L.P.*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, K. McKenzie Anderson, an attorney duly admitted to practice before this Court, hereby certifies pursuant to Local Civil Rule 7.1(c) that this Memorandum of Law was prepared using Microsoft Word, and the document contains 3,454 words as calculated by the application's word-counting function, excluding the parts of the Memorandum exempted by Local Civil Rule 7.1(c).

I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 17th day of June, 2025 in New York, New York.

*/s/ K. McKenzie Anderson*
K. McKenzie Anderson