1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200 Fax: +1.212.751.4864
www.lw.com

LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin, Beijing, Boston, Brussels, Chicago, Dubai, Düsseldorf, Frankfurt, Hamburg, Hong Kong, Houston, London, Los Angeles, Madrid, Milan, Munich, New York, Orange County, Paris, Riyadh, San Diego, San Francisco, Seoul, Silicon Valley, Singapore, Tel Aviv, Tokyo, Washington, D.C.

November 3, 2026

**VIA ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1506
New York, NY 10007

**RE: *Prime Success, L.P. v. Sinovac Biotech Ltd. et al.*, No. 1:25-cv-04989 (RA) (S.D.N.Y.)**

Dear Judge Abrams:

We write on behalf of Respondent Sinovac Biotech Ltd. ("Sinovac" or the "Company") in response to the Court's October 6, 2026 Order (ECF No. 35), as extended by the Court's October 21, 2026 Order (ECF No. 41). The Order directed Sinovac and Respondent 1Globe Capital LLC ("1Globe") to file a letter on the public docket attaching the Escrow Services Agreement dated as of June 6, 2025, between Sinovac and Equiniti Trust Company, LLC ("Equiniti" or the "Escrow Agent") and provided to the Court on June 18, 2025 (the "Agreement"), or to show cause why such production should not be required.[1]

Sinovac has no objection to public disclosure of the vast majority of the Agreement's terms, including all of the portions that were referenced during argument or in the Court's decisions in this matter. However, pursuant to Paragraph 5 of Your Honor's Individual Rules and Practices in Civil Cases (the "Individual Rules"), Sinovac respectfully requests leave to make limited redactions to Schedule A of the Agreement. The proposed redactions fall into three categories: (i) personal contact information and banking information and (ii) a narrow set of commercially sensitive terms governing the administration of the escrow accounts, consisting of the Escrow Agent's fees, and the Company's investment instructions, and last seven digits of each escrow account balance.

In accordance with the Individual Rules, a public version of the Agreement reflecting the proposed redactions is attached as Exhibit A, and an unredacted copy with the proposed redactions highlighted in yellow is being filed under seal as Exhibit B. We have conferred with non-parties Heng Ren Silk Road Investments LLC ("Heng Ren") and Alternative Liquidity Capital LP

[1] Latham & Watkins LLP represents only Sinovac in this matter and does not represent 1Globe. We understand that 1Globe and Equiniti take no position on this request. Citations to "Agreement §" refer to the numbered sections of the Agreement, and citations to "Sched. A §" refer to the numbered sections of Schedule A to the Agreement.

("ALC"), the parties who submitted the request for production of the Escrow Services Agreement, and they indicated they object to some of the requested redactions but not others.[2]

## I. BACKGROUND

On April 30, 2025, Sinovac's Board of Directors declared a cash dividend of US$55.00 per common share, payable to holders of record as of May 23, 2025 (the "Dividend"). Agreement at 1. On June 6, 2025, Sinovac entered into the Agreement, under which Equiniti agreed to hold, invest, and disburse the escrowed funds in accordance with its terms. *Id.* §§ 2–4, 6. Schedule A to the Agreement sets out, among other things, the escrow amounts and wiring instructions, the Escrow Agent's fees, the Company's investment instructions, the termination date of the escrow period, and the names and contact details of the persons designated to send, receive, and confirm instructions. *Id.* Sched. A §§ 1–8.

At the June 18, 2025 oral argument on Petitioner's application for injunctive relief, Respondents' prior counsel handed up a copy of the executed Agreement to the Court and provided copies to counsel. ECF No. 33. Following the Court's denial of Petitioner's application on June 20, 2025, the Clerk of Court closed this case. ECF No. 32. The Agreement was not docketed. The only provisions of the Agreement that were referenced during the June 18, 2025 argument and the Court's June 20, 2025 decision were the appointment of Equiniti Trust Company, LLC as escrow agent and the deposit of the dividend funds with it (Agreement §§ 2–3); (ii) the segregation of those funds into three separate escrow accounts, including an account of approximately $600 million attributable to Petitioner's disputed shares (Schedule A § 1); and (iii) the provision that disbursements be made only upon Written Direction from the Company's designated representative, Dr. Chiang Li (Agreement §§ 1, 4(a); Schedule A § 6).

On September 29, 2026, Heng Ren and ALC, which describe themselves as Sinovac shareholders, wrote to the Court requesting that the Agreement be entered on the public docket. ECF No. 35 at 1–2. The Court directed Respondents to file a letter attaching the Agreement or to show cause why such production should not be required by October 20, 2026. *Id.* at 1. In light of Sinovac's engagement of the undersigned as new counsel, the Court granted Sinovac's request to extend its response deadline to November 3, 2026. ECF No. 41 at 2.

---

[2] Specifically, Heng Ren and ALC object to proposed redactions of the names of the two Equiniti employees, the Escrow Agent's fees, the Company's investment instructions, and the last seven digits of each escrow account balance, contending that as shareholders, they are entitled to every piece of information about the Agreement regardless of its materiality or whether it was even used or referenced in this litigation. That is not the law. As an initial matter, the question before the Court is simply whether the Escrow Services Agreement should be included as part of the public record under *Lugosch*. But even if the question were about shareholder disclosure more generally, there is no credible argument that the limited information Sinovac seeks to redact could be material. "Disclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).

## II. LEGAL STANDARD

Pursuant to Paragraph 5.A.1 of the Individual Rules, the parties are permitted to redact certain sensitive information without prior Court approval. Consistent with Rule 5.2 of the Federal Rules of Civil Procedure, a filing may include only "the last four digits of [a] financial-account number." Fed. R. Civ. P. 5.2(a)(4). The Court's privacy policy similarly identifies information requiring "caution," including "personal identifying number(s)." *SDNY: Notice Regarding Privacy and Public Access to Electronic Civil and Criminal Case Files*.

Relatedly, the Second Circuit sets forth the framework for sealing information in public filings in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Under *Lugosch*, "a common law presumption of access attaches" to judicial documents, but the Court must "determine the weight of that presumption." *Id.* at 119. That weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995). "[D]ocuments that 'play only a negligible role in the performance of Article III duties' are accorded only a low presumption . . . ." *Brown v. Maxwell*, 929 F.3d 41, 49–50 (2d Cir. 2019). The Court must then balance competing considerations against disclosure. *Lugosch*, 435 F.3d at 120. Those considerations include "the privacy interests of those resisting disclosure," *id.* (quoting *Amodeo*, 71 F.3d at 1050), and the privacy interests of "innocent third parties," which "should weigh heavily in a court's balancing equation," *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (quoting *Amodeo*, 71 F.3d at 1050–51).

## III. THE PROPOSED REDACTIONS ARE WARRANTED

### A. The Proposed Redactions Are Appropriate

#### 1. Personal Contact Information and Banking Information

Sinovac's proposed redaction of the escrow account number (except the last four digits) is already authorized by the applicable rules. Fed. R. Civ. P. 5.2(a)(4); Individual Rules ¶ 5.A.1. Sinovac also seeks to redact the associated ABA routing number to further reduce the risk of unauthorized or improper activity with respect to that account. Agreement Sched. A § 1; *see also Lively v. Wayfarer Studios LLC*, 2025 WL 2351013, at *2 (S.D.N.Y. Aug. 13, 2025) (permitting redaction of "banking routing and account numbers"); *Averbach v. Cairo Amman Bank*, 2023 WL 4144758, at *3–4 (S.D.N.Y. June 23, 2023) (permitting redaction of "account numbers, routing numbers, and electronic identifying numbers for accounts that are still open" and recognizing that such financial information "could be misused if publicly released"); *Bunkers Int'l v. Orient Oil*, 2008 WL 5431166, at *1 (S.D.N.Y. Dec. 23, 2008) (sealing exhibits disclosing "bank account numbers and wire transfer information" because "[t]here is very little need for public access to such information and the potential for harm through bank fraud or identity theft is great").

Schedule A also lists the direct telephone numbers and email addresses of Sinovac's designated representative, Sinovac's corporate secretary, Sinovac's outside transactional counsel, and Equiniti's corporate actions and legal groups, and the names, email addresses, and direct telephone numbers of two Equiniti employees designated to receive and confirm instructions.

Agreement Sched. A §§ 6–8. The *Lugosch* factors favor redaction of such information. *First*, none of this information bears on any issue the Court was asked to decide. The identities of the Escrow Agent and the Company's designated representative are public information, and the contact details through which they communicate are "tangential to the instant dispute." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, 2023 WL 2810660, at *3 (S.D.N.Y. Apr. 6, 2023). *Second*, the privacy interests at stake, including those of the two non-party Equiniti employees whose names and direct contact information appear in Schedule A, weigh against disclosure. *Amodeo*, 71 F.3d at 1050–51. Courts routinely permit the redaction of such information. *See, e.g.*, *In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 4848758, at *5 (S.D.N.Y. Oct. 15, 2021) (sealing names, job titles, and email addresses of non-party employees despite "strong presumption of public access"); *Al Thani v. Hanke*, 2021 WL 2789276, at *1 (S.D.N.Y. Jan. 15, 2021) (redacting names of non-party investors whose identities were "not relevant to the resolution of the motions"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 156–57 (S.D.N.Y. 2015) (permitting narrowly tailored redactions of customer information, including names and financial account numbers).

### 2. Commercially Sensitive Terms of the Escrow Arrangement

Sinovac also seeks to redact a limited set of commercial terms in Schedule A: (i) the Escrow Agent's fees, including the annual escrow fee, the investment management fee, the total due at signing, and the basis-point fee charged against investment yield, Agreement Sched. A § 2; (ii) the Company's investment instructions, which identify the specific funds in which the escrowed funds are invested while awaiting disbursement, *id.* Sched. A § 5; and (iii) the last seven digits of each escrow balance, *id.* Sched. A § 1. Each category warrants redaction.

*First*, although the amount of the Dividend is generally known, the specific terms on which the escrow accounts are managed, including the fees charged, the investment vehicles in which the funds are held, and the specific accounts used, are commercially sensitive. Disclosing these terms now could impair Sinovac's ability to negotiate for different terms in connection with other banking, custody, and treasury services, because prospective counterparties would have a public benchmark of the terms Sinovac accepted here. Disclosure would also reveal a non-party Equiniti's confidential pricing to its competitors. Courts in this Circuit routinely protect non-public financial and pricing information of this kind. *See Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009) (affirming sealing where interest in protecting confidential business information outweighed presumption of access); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (sealing material concerning, among other things, "costs and budgeting"); *Huawei Techs. Co., Ltd. V. PanOptis Patent Mgmt., LLC*, 2026 WL 370287, at *1–2 (S.D.N.Y. Feb. 10, 2026) (permitting redaction of "commercially sensitive" information, including "specific financial figures" that "were not essential to [the Court's] reasoning"); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (permitting redaction of confidential business and financial information).

*Second*, these terms played no role in the litigation and do not bear on any dispositive issues in the case. Nothing in the Court's analysis turned on the Escrow Agent's fees, the money market funds in which the escrowed cash may be invested, or the precise balance of each sub-account.

Information that plays "only a negligible role in the performance of Article III duties" is entitled to, at most, a low presumption of access. *Brown*, 929 F.3d at 49–50; *see Amodeo*, 71 F.3d at 1049–50.

*Third*, the redacted amounts are not material. Because Sinovac proposes to redact only the last seven digits of each escrow balance, the redacted portion of any balance is necessarily less than $9,999,999. Even at that theoretical maximum, the redacted portion would represent only approximately 0.25% of the more than $3.9 billion in total escrowed funds. Redacting these figures does not meaningfully change the public's understanding of the Agreement, while disclosing them would enable the readers to reverse engineer the commercially sensitive information that Sinovac otherwise seeks to maintain as confidential.

**B. The Proposed Redactions Are Narrowly Tailored**

All of the proposed redactions are narrowly tailored to discrete entries in Schedule A; the body of the Agreement, its signature pages, the identity of each party and each person with authority to act under it, and the principal escrow balances to the nearest $10 million dollars all remain public. Courts routinely find such limited redactions reasonable and appropriate. *See, e.g.*, *Al Thani*, 2021 WL 2789276, at *1 (granting redactions "narrowly tailored to protect the investors' privacy interests"); *Dodona*, 119 F. Supp. 3d at 156 (similar).

## IV. CONCLUSION

For the foregoing reasons, Sinovac respectfully requests that the Court permit Sinovac to file the Agreement on the public docket with the limited redactions reflected in Exhibit A, and to maintain the unredacted version, Exhibit B, under seal.

We thank the Court for its consideration and are available to answer any questions.

Respectfully submitted,

/s/ *Jason C. Hegt*
Jason C. Hegt

LATHAM & WATKINS LLP

*Counsel for Respondent Sinovac Biotech Ltd.*

cc: All Counsel of Record (via ECF)
Heng Ren Silk Road Investments LLC and Alternative Liquidity Capital LP (via email)

To the extent that Heng Ren and/or ALC seek to respond to this application, they shall do so no later than November 19, 2026. Sinovac shall send a copy of this memorandum endorsement to Heng Ren and ALC via email no later than tomorrow.

SO ORDERED.

Hon. Ronnie Abrams
November 4, 2026