**HENG REN SILK ROAD INVESTMENTS LLC**
One Boston Place, Suite 2600 · Boston, MA 02108
phalesworth@hengreninvestment.com

---

November 5, 2026

**[AS DIRECTED BY CHAMBERS]**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1506
New York, NY 10007

**Re: *Prime Success, L.P. v. Sinovac Biotech Ltd. et al.*, No. 1:25-cv-04989 (RA) (S.D.N.Y.): Response to Sinovac's Letter Seeking Leave to Redact the Escrow Services Agreement (ECF No. 44)**

Dear Judge Abrams:

Heng Ren Silk Road Investments LLC ("Heng Ren") and Alternative Liquidity Capital ("ALC") are non-party Sinovac shareholders who asked the Court to place the Escrow Services Agreement on the public docket (ECF No. 35). We thank the Court for its prompt order and seek a quick resolution. We respond to Sinovac's November 3, 2026 letter (ECF No. 44, the "Letter"), which seeks leave to redact parts of Schedule A.

We do not oppose redacting telephone numbers, email addresses, the ABA routing number, or the escrow account number except its last four digits. We oppose the other proposed redactions: the names in Schedule A, section 8, the Escrow Agent's fees, the Company's investment instructions, and the last seven digits of each balance. Sinovac has not carried its burden under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), and its Letter mischaracterizes our position.

### 1. Sinovac mischaracterizes our position

Sinovac says we contend that "as shareholders, they are entitled to every piece of information about the Agreement regardless of its materiality." Ltr. at 2 n.2. That is not our position, and the Letter itself shows it. In its text, Sinovac acknowledges that we "object to some of the requested redactions but not others." *Id.* at 2. We did not object to redacting telephone numbers, email addresses, the ABA routing number, or the escrow account number except its last four digits.

Sinovac's reliance on *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002), is also misplaced. As we understand it, that decision addresses what an issuer must disclose to investors under the securities laws, not the presumption of public access to judicial documents. The question here is whether Sinovac has justified sealing part of a document the Court ordered to be filed publicly, and Sinovac bears that burden.

### 2. Sinovac cannot redact what it concedes or itself discloses is public

**The Escrow Agent's identity.** Schedule A, section 8 redacts the "Name" entries listed under the heading "Escrow Agent." Yet Sinovac states that "[t]he identities of the Escrow Agent and the Company's designated representative are public information." Ltr. at 4. Redacting information that

is already public is not permitted. *See North Star IP Holdings, LLC v. Icon Trade Services, LLC*, 710 F. Supp. 3d 183, 212 (S.D.N.Y. 2024). Sinovac leaves the Company representative's name visible in the same table. As to the two individuals, no contact information is sought. Their names appear as Equiniti's designated agents under the Agreement's security procedures (Agreement § 15), Sinovac points to no concrete harm to them, and Equiniti takes no position. Ltr. at 1 n.1.

**The amounts.** Sinovac's Letter discloses figures that the filed Agreement withholds. The Letter states that total escrowed funds exceed $3.9 billion, *id.* at 5, and that one account holds approximately $600 million attributable to the disputed shares, citing Schedule A, section 1, *id.* at 2. The total amount in escrow is therefore stated in the Letter but is not shown in full in the Agreement as filed, where Schedule A, section 1 cuts it off after "$3,95" with a redaction. The Letter's "approximately $600 million" also does not match Schedule A, section 1, where the visible digits of that balance begin "$64." Neither the Letter nor Exhibit A states the date as of which any balance is measured. If these figures are not too sensitive to appear in Sinovac's Letter, they are not too sensitive to appear in the Agreement.

**3. Sinovac has not shown why the fees and investment terms should be sealed**

Sinovac argues the presumption of access is low because these terms "played no role" in the Court's decisions. Ltr. at 4–5. But the Agreement was handed up in full and accepted at argument (ECF No. 33), and the Court ordered the Agreement itself placed on the public docket (ECF No. 35), not selected provisions. Even where the presumption is modest, Sinovac must identify a specific countervailing interest, and general assertions are not enough. *See Lugosch*, 435 F.3d at 119–20.

**Generalized harm.** Sinovac's only stated harm is that disclosure "could impair" its ability to negotiate other banking, custody and treasury services because counterparties would have a "public benchmark." Ltr. at 4. That is speculative, and it is not the particularized showing the law requires.

**Investment vehicles.** Sinovac gives no reason why the funds in which the escrow is invested deserve protection. Its Letter calls them "money market funds" (Ltr. at 4), and the Agreement leaves visible the default investment, the Citibank Insured Money Market Account, and refers to the funds' prospectus (Agreement § 6(a)). The redacted columns (fund family, fund name, fund number and CUSIP) identify investment products. They are not Sinovac trade secrets or proprietary information.

**Equiniti's pricing.** Sinovac stresses that disclosure "would also reveal a non-party Equiniti's confidential pricing to its competitors." Ltr. at 4. Yet Sinovac also reports that Equiniti takes "no position" on the request. Ltr. at 1 n.1. Indeed, we saw Equiniti's communication in which it expressed its neutral position. Sinovac cannot assert a non-party's confidentiality interest when that non-party asserts none.

**Why the fees matter.** The Agreement lets Equiniti pay itself from the escrowed funds (§ 10), charges investment expenses and losses to those funds (§ 6(c)), and applies a basis-point fee "taken as a reduction to the investment yield" (Sched. A § 2). The funds were set aside to pay a declared dividend to the Company's valid shareholders (Agreement, recitals). Those shareholders have a direct interest in what is charged against the money.

**4. Redacting the last seven digits of each balance is unpersuasive and arbitrary**

Sinovac says "the amount of the Dividend is generally known." Ltr. at 4. That concession undercuts any claim that the balances are confidential, and Sinovac offers no compelling reason

why the hidden digits implicate a privacy interest. Its warning that readers could "reverse engineer" commercially sensitive information, *id.* at 5, is far-fetched, particularly because the other information it seeks to protect is not commercially sensitive to begin with. The line is also arbitrary: nothing explains why seven digits, rather than six or eight, is the point at which a balance becomes sensitive.

Sinovac's own arithmetic shows the redaction protects little. It says the hidden digits are at most about 0.25% of $3.9 billion. *Id.* at 5. Measured against the roughly $658 million the 2025 Form 20-F reports as still held, they could be about 1.5%. As applied, the redaction also hides the entire balance of the Fees and Expenses Escrow Account, which appears only as a dollar sign (Sched. A § 1).

**5. Relief requested**

For these reasons, we respectfully ask the Court to:

1. Grant Sinovac's request only as to telephone numbers, email addresses, the ABA routing number, and the escrow account number except its last four digits.
2. Deny it as to the names in Schedule A, section 8, the Escrow Agent's fees (Sched. A § 2), the investment instructions (Sched. A § 5), and the last seven digits of each balance (Sched. A § 1), and direct Sinovac to file a revised public version.
3. Direct Sinovac to confirm that Exhibit A is the complete Agreement, including every schedule, appendix, supplement and amendment, and to state the date as of which its balances are measured. The Letter does not say.

We appreciate the Court's time and are available to answer any questions.

Respectfully submitted,

**Peter Halesworth**
Founder, Managing Partner & Chief Investment Officer
Heng Ren Silk Road Investments

**Jacob Mohs**
Managing Partner
Alternative Liquidity Capital Management

cc: Jason C. Hegt, Latham & Watkins LLP, counsel for Sinovac Biotech Ltd. (via email).