# EXHIBIT A

*EXECUTION COPY*

ESCROW SERVICES AGREEMENT

THIS ESCROW SERVICES AGREEMENT (this "Agreement"), dated as of June 6, 2025 (the "Effective Date"), is entered into by and among Sinovac Biotech Ltd., a company incorporated under the laws of Antigua and Barbuda (the "Company"), and EQUINITI TRUST COMPANY, LLC, a New York limited liability trust company (the "Escrow Agent"; together with the Company, the "Parties"; each, the "Party").

WHEREAS, on April 30, 2025, the Board of Directors of the Company declared a cash dividend of US$55.00 to be paid on or about July 9, 2025 to valid holders of the Company's common shares, par value $0.001 (the "Common Shares"), as of May 23, 2025 (the "Record Date" and such dividend, the "Dividend"); and

WHEREAS, the Company desires to appoint the Escrow Agent as its escrow agent to hold and disburse the Escrow Funds (as defined below), and the Escrow Agent desires to accept such appointment pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, as consideration for the premises and of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1. Definitions. The following terms shall have the meanings indicated or referred to below, inclusive of their singular and plural forms, except where the context requires otherwise. Unless the context requires otherwise, all references to "years," "months," or "days" shall mean "calendar years," "calendar months," and "calendar days." References in this Agreement to "including" shall mean "including, without limitation," whether or not so specified. Any term not defined below which is initially capitalized in this Agreement shall have the meaning ascribed to it in this Agreement.

"Affiliate" means, with respect to any person, (a) a person which directly or indirectly through one or more intermediaries controls, is controlled by or is under common control with such person, (b) any person of which such person is the beneficial owner of a fifty percent (50%) or greater interest, or (c) any person which acquires all or substantially all of the assets of such person. A person is deemed to control another person if such person, directly or indirectly, has the power to direct the management, operations or business of such person. The term "beneficial owner" is to be determined in accordance with Rule 13d-3 of the Securities Exchange Act of 1934, as amended.

"Business Day" shall mean any day other than a Saturday, a Sunday, or a day on which banking institutions in the State of New York are authorized or obligated by law or executive order to close.

"Escrow Funds" shall mean the funds deposited with the Escrow Agent pursuant to Section 3 of this Agreement, together with any earnings thereon (including interest).

"Escrow Period" shall mean the period commencing on the date hereof and ending on the applicable termination date set forth on Schedule A hereto.

"Written Direction" shall mean a written direction executed by the Company and directing the Escrow Agent to disburse all or a portion of the Escrow Funds or to take or refrain from taking an action pursuant to this Agreement.

2. Appointment of and Acceptance by the Escrow Agent. The Company hereby appoints the Escrow Agent to serve as escrow agent hereunder. The Escrow Agent hereby accepts such appointment

and, upon receipt of Escrow Funds, by wire transfer of immediately available funds or by check in accordance with Section 3 below, agrees to hold, invest and disburse Escrow Funds in accordance with this Agreement. Notwithstanding the foregoing, if Escrow Funds are transferred to the Escrow Agent by check in accordance with Section 3 below, the Escrow Agent shall not accept such appointment as escrow agent hereunder until such check has cleared the banking system.

3. Deposit of Escrow Funds. The Company will transfer Escrow Funds up to the amount set forth on Schedule A hereto to the Escrow Agent, by wire transfer of immediately available funds or by check, to the segregated account of Escrow Agent referenced on Schedule A hereto. The Escrow Agent will establish escrow accounts as referenced on Schedule A hereto. To the extent the Company transfers additional funds, by wire transfer of immediately available funds or by check, to the Escrow Agent's account as referenced on Schedule A hereto, the Escrow Agent shall amend Schedule A hereto and provide such amended Schedule A to the Company.

4. Disbursements of Escrow Funds; Unclaimed Funds.

(a) Escrow Agent shall disburse Escrow Funds from time to time, upon receipt of, and in accordance with, a Written Direction. Such Written Direction shall contain wire instructions or an address to which a check shall be sent. Upon the expiration of the Escrow Period, Escrow Agent shall distribute, upon receipt of a Written Direction, Escrow Funds (or the remainder of such Escrow Funds, after any disbursement in connection with any prior Written Direction(s)) in the manner described on Schedule A hereto, and in the amounts listed on a schedule to be attached to such notice. Any and all disbursements under this Section 4 shall be made within five (5) Business Days of Escrow Agent's receipt of a Written Direction.

(b) If there is any amount of undisbursed or unclaimed Escrow Funds on the Termination Date (as defined in Schedule A hereto), and if Escrow Agent shall not have received a Written Direction no later than five (5) Business Days after the Termination Date (as defined in Schedule A hereto), Escrow Agent, in addition to its other rights herein, (i) (A) may maintain and manage such Escrow Funds for such period of time as it determines may be necessary or appropriate, including in accordance with applicable state escheatment and unclaimed property laws, as determined by Escrow Agent in its sole discretion and (B) shall have the right to escheat any such Escrow Funds pursuant to applicable state escheatment and unclaimed property laws and, in such case, shall remit such Escrow Funds (less any fees, costs, expenses or other amounts due to Escrow Agent or any other Indemnified Party (as defined below) in accordance with this Agreement (including Schedule A hereto)) to any relevant competent authority and (ii) may take any other action permitted by this Agreement, including Section 5, Section 7 and Section 10 of this Agreement.

(c) All disbursements of Escrow Funds shall be subject to the fees, costs, expenses and other amounts due to Escrow Agent and any other Indemnified Party (as defined below) hereunder.

5. Suspension of Performance; Disbursement into Court. If, at any time, (i) there shall exist any dispute between the Company and the Escrow Agent with respect to the holding or disposition of all or any portion of Escrow Funds or any other obligations of the Escrow Agent hereunder, (ii) the Escrow Agent is unable to determine, to the Escrow Agent's sole satisfaction, the proper disposition of all or any portion of Escrow Funds or the Escrow Agent's proper actions with respect to its obligations hereunder, or (iii) the Company has not, within thirty (30) days of the furnishing by the Escrow Agent of a notice of resignation pursuant to Section 7 hereof, appointed a successor escrow agent to act hereunder (which such successor escrow agent has accepted such appointment), then the Escrow Agent may, in its sole discretion, take either or both of the following actions; provided, however, that Escrow Agent shall hold and safeguard the Escrow Funds during such time: (a) suspend the performance of any of its obligations (including any

disbursement obligations) under this Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of the Escrow Agent or until a successor escrow agent shall have been appointed (as the case may be); and/or (b) petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction in any venue convenient to the Escrow Agent, for instructions with respect to such dispute or uncertainty, and to the extent required or permitted by law, pay into such court, for holding and disposition in accordance with the instructions of such court, all Escrow Funds, after deduction and payment to the Escrow Agent of all reasonable and documented fees, costs and expenses (including court costs and reasonable expenses and attorneys' fees) or any other amount payable to, incurred by, or expected to be incurred by the Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. The Escrow Agent shall have no liability to the Company, or to their respective shareholders, partners, or members, officers or directors, employees, Affiliates or any other person with respect to any such suspension of performance or disbursement into court (including any disbursement obligations hereunder), specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of Escrow Funds or any delay in or with respect to any other action required or requested of the Escrow Agent.

6. Investment of the Escrow Funds.

(a) Investment of Escrow Funds. At all times prior to the disbursement of Escrow Funds, the Escrow Agent will invest Escrow Funds in one or more of the funds set forth under the heading "Investment Instructions" in Schedule A as the Company shall direct in writing. The Company hereby acknowledges and agrees that it has reviewed the prospectus prior to investing. The Escrow Agent is further authorized to sell or redeem any or all of such investments and to reinvest the proceeds of such sales or redemptions in like investments, all upon written instructions signed by the Company. In the absence of written instructions from the Company, Escrow Funds shall be invested and reinvested in the Citibank Insured Money Market Account (the "IMMA"). Notwithstanding any of the foregoing, (i) no portion of Escrow Funds may be held in an investment which does not mature or cannot be sold, redeemed or otherwise liquidated at the holder's option in seven (7) days or less without loss of interest or discount and (ii) the Escrow Agent is authorized to sell or redeem any or all of such investments without further instructions as may be necessary from time to time to pay in immediately available funds any amount to be paid pursuant to Section 9 hereof.

(b) Registrations; Information Regarding Investments. The Company hereby acknowledges and agrees that the Escrow Agent will not provide supervision, recommendations or advice relating to either the investment of funds held or the purchase, sale, retention or other disposition of any permitted investments. All investments of Escrow Funds, if any, shall be registered and held in the name of the Escrow Agent, as the escrow agent for the Company. The Escrow Agent will send statements to the Company on a monthly basis reflecting activity (including a list of all investments) with respect to Escrow Funds for the preceding month. Although the Company acknowledges that it may obtain a broker confirmation or written statement containing comparable information at no additional cost, the Company hereby agrees that confirmations of permitted investment transactions are not required to be issued by the Escrow Agent for each month in which a monthly statement is rendered.

(c) Effect of Gains and Losses. Interest and other earnings or gains realized from the investment of Escrow Funds, if any, shall be considered a part of Escrow Funds. Any loss from any investment, or any expense incurred by the Escrow Agent in connection with the investment of the Escrow Funds, will be borne by Escrow Funds. The Escrow Agent is hereby authorized to execute purchases and sales of permitted investments through the facilities of its own trading or capital markets operations or those of any affiliated entity.

7. Resignation of Escrow Agent. The Escrow Agent may resign and be discharged from the performance of its duties hereunder at any time by giving ten (10) days' prior written notice to the Company

specifying the date when such resignation shall take effect. Upon any such notice of resignation, the Company shall issue to the Escrow Agent a Written Direction authorizing redelivery of Escrow Funds to a bank or trust company that has been retained as successor escrow agent hereunder prior to the effective date of such resignation. The Escrow Agent shall transmit all records pertaining to Escrow Funds and shall remit all Escrow Funds to the successor escrow agent, after making copies of such records as the Escrow Agent deems advisable and after deduction and payment to the Escrow Agent of all reasonable and documented out-of-pocket fees, costs and expenses (including court costs and reasonable expenses and attorneys' fees) or any other amount payable to, incurred by, or expected to be incurred by the Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder. After the Escrow Agent's resignation, the provisions of this Agreement shall inure to its benefit as to any actions taken or omitted to be taken by it while it was the escrow agent under this Agreement. Any corporation or other entity into which the Escrow Agent may be merged or converted or with which it may be merged or consolidated, or any other entity to which all or a majority of all of the Escrow Agent's escrow business may be transferred by sale of assets or otherwise, shall be the escrow agent under this Agreement without further act or consent of any party hereto.

8. Liability of the Escrow Agent.

(a) The Escrow Agent undertakes to perform only the ministerial duties as are expressly set forth herein and no other duties and obligations (fiduciary or otherwise) shall be implied. The Escrow Agent shall have no duty to enforce any obligation of any other person to make any payment or delivery, or to direct or cause any payment or delivery to be made, or to enforce any obligation of any other person to perform any other act. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement (even though such agreement may be referenced in this Agreement) other than this Agreement. In the event of any conflict between the terms and provisions of this Agreement and any other agreement, as to Escrow Agent, the terms and conditions of this Agreement shall control subject to Section 16(m) hereof Escrow Agent shall not be liable the Company or to anyone else for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's fraud, bad faith, gross negligence or willful misconduct. The Escrow Agent's sole responsibility under this Agreement shall be for the safekeeping and disbursement of Escrow Funds in accordance with the terms of this Agreement. The Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth in an agreement between the Escrow Agent and the Company. The Escrow Agent shall have no duty to solicit any payment which may be due to be paid in Escrow Funds or to confirm or verify the accuracy or correctness of any amounts deposited in accordance with this Agreement. The Escrow Agent may rely conclusively, and shall be protected in acting, upon any notice, instruction (including a Written Direction), wire or other payment instruction, request, order, judgment, certification, opinion or advice of counsel (including counsel chosen by the Escrow Agent), statement, demand or other instrument or document, not only as to its due execution, validity (including the authority of the person signing or presenting the same) and effectiveness, but also as to the truth and accuracy of any information contained therein, which the Escrow Agent shall believe to be genuine and to have been signed or presented by the person or parties purporting to sign the same.

(b) In no event shall the Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages of any kind whatsoever (including lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action, absent fraud, bad faith, gross negligence or willful misconduct by the Escrow Agent. The officers, directors, members, partners, trustees, employees, agents, attorneys or other representatives and Affiliates of the Escrow Agent owe no duty or obligation to any party hereunder and shall have no liability to any person by reason of any error of judgment, for any act done or not done, for any mistake of fact or law, or otherwise, absent fraud, bad faith, gross negligence or willful misconduct.

(c) The Escrow Agent shall not be obligated to take any legal or other action or commence any proceeding in connection with Escrow Funds, any account in which Escrow Funds are deposited, this Agreement or any other agreement, or to appear in, prosecute or defend any such legal action or proceeding (whether or not it shall have been furnished with acceptable indemnification and advancement). The Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other agreement or of its duties hereunder, or relating to any dispute or question involving any party hereto, and shall incur no liability and shall be fully indemnified from any liability whatsoever in acting in accordance with the opinion or instruction of such counsel. The Company shall promptly pay, upon demand, the reasonable fees, costs and expenses of any such counsel.

(d) The Escrow Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court with respect to Escrow Funds, without determination by the Escrow Agent of such court's jurisdiction in the matter. If any portion of Escrow Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any other Parties or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

9. Indemnification of Escrow Agent. From and at all times after the date of this Agreement, the Company shall, to the fullest extent permitted by law, defend, indemnify and hold harmless the Escrow Agent and each director, officer, member, partner, trustee, employee, attorney, agent and Affiliate of the Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs, penalties, settlements, judgments and expenses of any kind or nature whatsoever (including costs and expenses and reasonable attorneys' fees) incurred by or asserted against any of the Indemnified Parties from and after the date hereof, whether direct, indirect or consequential, as a result of, in connection with, or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including the Company, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person (whether it is an Indemnified Party or not) under any statute or regulation, including any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance of this Agreement or any transactions contemplated herein or relating hereto (including tax reporting or withholding or the enforcement of any rights or remedies under or in connection with this Agreement), whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation (without derogation of any other indemnity afforded to Escrow Agent); provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted from the gross negligence or willful misconduct of such Indemnified Party. Each Indemnified Party shall, in its sole discretion, have the right to select and employ separate counsel with respect to any action or claim brought or asserted against it, and the reasonable and documented fees of such counsel (and such counsel's costs and expenses) shall be paid, upon demand, by the Company.

10. Fees, Costs and Expenses of the Escrow Agent. The Company shall compensate the Escrow Agent for its services hereunder in accordance with Schedule A attached hereto and, in addition, shall reimburse the Escrow Agent for all of its reasonable and documented out-of-pocket costs and expenses

incurred in connection with the services hereunder, including attorneys' fees, travel expenses, telephone and facsimile transmission costs, postage (including express mail and overnight delivery charges), copying charges and the like. The additional provisions and information set forth on Schedule A hereto are hereby incorporated by this reference, and form a part of this Agreement. All of the compensation and reimbursement obligations set forth in this Section 10 shall be payable by the Company upon execution of this Agreement and, in the future, upon demand by the Escrow Agent. The Escrow Agent is expressly authorized and directed, but shall not be obligated, to, and may, charge against and disburse to itself from Escrow Funds (including taking such steps as selling any investment held as part of Escrow Funds), from time to time, the amount of any compensation and reimbursement of any costs, fees and expenses set forth on Schedule A hereto which are due and payable hereunder, including any amount to which the Escrow Agent or any other Indemnified Party is entitled to seek indemnification pursuant to Section 9 hereof, or any other reasonable and documented amount owing to the Escrow Agent hereunder. The Escrow Agent shall notify the Company of any disbursement from Escrow Funds to itself or any other Indemnified Party in respect of any compensation or reimbursement hereunder and shall furnish to the Company copies of all related invoices and other statements.

11. Representations and Warranties. The Company covenants and makes the following representations and warranties to Escrow Agent:

(a) It is duly organized, validly existing, and in good standing under the laws of the country of its incorporation or organization, and has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

(b) This Agreement has been duly approved by all necessary action, including any necessary shareholder or board approval, has been executed by its duly authorized officers, and constitutes its valid and binding agreement enforceable in accordance with its terms.

(c) The execution, delivery, and performance of this Agreement will not violate, conflict with, or cause a default under its articles of incorporation, bylaws, management agreement or other organizational document, as applicable, any applicable law, rule or regulation, any court order or administrative ruling or decree to which it is a party or any of its property is subject, or any agreement, contract, indenture, or other binding arrangement to which it is a party or any of its property is subject.

(d) The applicable persons designated on Schedule A hereto have been duly appointed to act as its representatives hereunder and have full power and authority to execute and deliver any Written Direction, to amend, modify or waive any provision of this Agreement and to take any and all other actions under this Agreement, all without further consent or direction from, or notice to, it or any other party.

(e) No person other than the Parties hereto has, or shall have, any lien, claim or security interest in Escrow Funds or any part thereof. To the Company's knowledge, no financing statement under the Uniform Commercial Code is on file in any jurisdiction claiming a security interest in or describing (whether specifically or generally) Escrow Funds or any part thereof.

(f) All of its representations and warranties contained herein are true and complete as of the date hereof and will be true and complete at the time of any disbursement of Escrow Funds.

12. Patriot Act Disclosure; Taxpayer Certification and Reporting.

(a) Patriot Act Disclosure. The Company acknowledges that a portion of the identifying information set forth on Schedule A hereto is being requested by the Escrow Agent in connection with the USA Patriot Act, Pub.L.107-56 (the "Act"), and the Company agrees to provide any additional information

requested by the Escrow Agent in connection with the Act or any similar law, rule, regulation, order, or other governmental act to which the Escrow Agent is subject, in a timely manner and consent to the Escrow Agent obtaining from third parties any such identifying information. The Company represents that all identifying information set forth on Schedule A hereto, including its Taxpayer Identification Number assigned by the Internal Revenue Service or any other taxing authority, is true and complete on the date hereof and will be true and complete at the time of any disbursement of Escrow Funds. For a non-individual person such as a charity, a trust, or other legal entity, the Escrow Agent may require documentation to verify formation and existence as a legal entity. The Escrow Agent may also require financial statements, licenses, identification and authorization documentation from any individual claiming authority to represent the entity or other relevant documentation.

(b) Certification and Tax Reporting. The Company has provided the Escrow Agent with their respective fully executed Internal Revenue Service ("IRS") Form W-8, or W-9 and/or other required documentation. The Company acknowledges that solely for tax purposes, the Escrow Agent does not have any interest in Escrow Funds. All interest or other income earned under this Agreement shall be allocated to the Company and reported, as and to the extent required by law, by the Escrow Agent to the IRS, or any other taxing authority, on IRS Form 1099 or 1042S (or other appropriate form) as income earned from Escrow Funds by the Company whether or not said income has been distributed during such year. the Company shall timely file all tax returns and pay all taxes due with respect to any income earned or losses generated with respect to Escrow Funds. The Escrow Agent shall not have any liability for the payment of taxes with respect to Escrow Funds, and the Company shall indemnify and hold the Escrow Agent harmless from and against all such taxes. The Escrow Agent shall withhold any taxes it deems appropriate in the absence of proper tax documentation or as required by law, and shall remit such taxes to the appropriate authorities. The Company hereby represents and warrants to the Escrow Agent that (i) there is no sale or transfer of a United States Real Property Interest as defined under Section 897(c) of the Internal Revenue Code of 1986, as amended, in the underlying transaction giving rise to this Agreement and (ii) such underlying transaction does not constitute an installment sale requiring any tax reporting or withholding of imputed interest or original issue discount to the IRS or other taxing authority.

13. Consent to Jurisdiction and Venue. In the event that any Party commences a lawsuit or other proceeding relating to or arising from this Agreement, the Parties agree that the United States District Court for the Southern District of the State of New York shall have the sole and exclusive jurisdiction over any such proceeding. If such court lacks federal subject matter jurisdiction, the Parties agree that the Supreme Court of the State of New York within New York County shall have sole and exclusive jurisdiction. Any final judgment shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Any of these courts shall be proper venue for any such lawsuit or judicial proceeding and the parties hereto waive any objection to such venue and irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such suit or proceeding in any such court has been brought in an inconvenient forum. The Parties consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts. **EACH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY AND AGREES THAT ANY OF THEM MAY FILE A COPY OF THIS SECTION OF THIS AGREEMENT WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES HERETO IRREVOCABLY TO WAIVE THE RIGHT TO TRIAL BY JURY IN ANY LITIGATION RELATED TO OR ARISING UNDER THIS AGREEMENT**

14. Notice. All notices, instructions (pursuant to a Written Direction or otherwise), approvals, consents, requests, and other communications hereunder shall be in writing and shall be deemed to have been given (a) when such writing is delivered by hand or overnight delivery service, or (b) upon telephone

call-back in accordance with Section 15 below, after being sent by e-mail with PDF attachment from the designated e-mail account(s) of the sending person(s) as designated on Schedule A hereto to the designated e-mail account(s) of the receiving person(s) as designated on Schedule A hereto or (c) three (3) Business Days after being mailed by first class mail (postage prepaid), in each case to the address set forth on Schedule A hereto or to such other address as each party hereto may designate for itself by like notice.

15. Security Procedures.

(a) If notices, instructions (pursuant to a Written Direction or otherwise), approvals, consents, requests, and other communications, are received by the Escrow Agent by e-mail at its e-mail account(s) as designated on Schedule A hereto, the Escrow Agent is authorized, but not required, to seek prompt confirmation of such communications by telephone call-back to the sending person or persons' telephone number(s) as designated on Schedule A hereto, and the Escrow Agent may rely upon the confirmation of anyone purporting to be the person or persons so designated in that call-back. Any e-mail by PDF attachment executed by more than one person shall be sent by each signatory. The persons and their telephone numbers authorized to receive call-backs as designated in Schedule A hereto may be changed only in a writing actually received and acknowledged by the Escrow Agent and delivered in accordance with Section 14 above and, if applicable, this Section 15. The Parties hereby acknowledge and agree that the security procedures set forth above are commercially reasonable.

(b) The Escrow Agent in any funds transfer may rely solely upon any account numbers or similar identifying numbers provided by the Parties to identify (i) a beneficiary, (ii) a beneficiary's bank, or (iii) an intermediary bank. The Escrow Agent may apply any of Escrow Funds for any payment order it executes using any such identifying number, even where its use may result in a person other than a beneficiary being paid, or the transfer of funds to a bank other than a beneficiary's bank or an intermediary bank designated.

16. Miscellaneous.

(a) Amendment or Waiver. This Agreement may be changed, waived, discharged or terminated only by a writing signed by the Parties. No delay or omission by any Party in exercising any right with respect hereto shall operate as a waiver. A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

(b) Severability. To the extent any provision of this Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

(c) Governing Law. This Agreement shall be construed and interpreted in accordance with the internal laws of the State of New York without giving effect to the conflict of laws principles thereof.

(d) Entire Agreement. This Agreement constitutes the entire agreement between the Parties relating to the holding, investment and disbursement of Escrow Funds and sets forth in their entirety the obligations and duties of the Escrow Agent with respect to Escrow Funds.

(e) Binding Effect. All of the terms of this Agreement, as amended from time to time, shall be binding upon, inure to the benefit of and be enforceable by the respective successors and assigns of the Company and the Escrow Agent.

(f) Execution in Counterparts. This Agreement and any Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same agreement or direction.

Subject to Section 14 and Section 15 hereof, this Agreement and any Written Direction may be executed and delivered by electronic signature (e.g., DocuSign) or by e-mailing a PDF version of a signed signature page, which shall have the same force and effect as the delivery of an originally executed signature page.

(g) Termination of the Escrow Agent. Upon the first to occur of (i) the termination of the Escrow Period (and the occurrence of the related distribution(s)), (ii) the disbursement of all Escrow Funds pursuant to one or more Written Directions, into court pursuant to Section 5 hereof, in accordance with applicable state escheatment and unclaimed property laws or otherwise and (iii) the resignation of the Escrow Agent, the Escrow Agent shall be released from its obligations hereunder and the Escrow Agent shall have no further obligation or liability whatsoever with respect to this Agreement or Escrow Funds. The obligations of the Company continue to exist notwithstanding the termination or discharge of the Escrow Agent's obligations or liabilities hereunder until the obligations of the Company have been fully performed.

(h) Dealings. The Escrow Agent and any beneficial owner, director, officer or employee of Escrow Agent may buy, sell, and deal in any of the securities of the Company, subject to compliance with federal securities laws, and become pecuniarily interested in any transaction in which the Company may be interested, and contract and lend money to the Company and otherwise act as fully and freely as though it were not the escrow agent under this Agreement. Nothing herein shall preclude the Escrow Agent from acting in any other capacity for the Company or for any other entity.

(i) Currency. The currency applicable to any amount payable or receivable under this Agreement is United States dollars.

(j) Payment. If any amount due to the Escrow Agent under this Agreement is not paid within thirty (30) days (subject to any longer time period prescribed herein) after notice to the Company (other than any amount that is subject to good faith dispute), the Company shall pay interest thereon (from the due date to the payment date) at a per annum rate equal to ten (10) percent.

(j) Force Majeure. The Escrow Agent shall not be liable for failure or delay in the performance of its duties and responsibilities hereunder if such failure or delay is due to causes beyond its reasonable control, including but not limited to acts of God (including fire, flood, earthquake, storm, hurricane or other natural disaster), pandemic, war, invasion, act of foreign enemies, hostilities (regardless of whether war is declared), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation, terrorist activities, nationalization, government sanction, blockage, embargo, labor dispute, strike, lockout or interruption or failure of electricity or telephone service or any other force majeure event.

(k) No Third Party Beneficiaries. This Agreement and all of its terms and conditions are for the sole and exclusive benefit of the Parties and their respective permitted successors and assigns. Nothing expressed or referred to in this Agreement will be construed to give any person or entity other than the Parties any legal or equitable rights, remedy, or claim under or with respect to this Agreement or any term or condition of this Agreement.

(l) No Strict Construction. The Parties have participated jointly in the negotiation and draft of this Agreement. In the event any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if it were drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party hereto by virtue of authorship of any provision of this Agreement.

(m) Priority. In the event of any conflict between the provisions of Schedule A hereto and the remainder of this Agreement, this Agreement shall be construed in a manner prescribed by Escrow Agent acting in good faith.

(n) Headings. The headings in this Agreement are for convenience purposes and shall be ignored for purposes of enforcing this Agreement, do not constitute a part of this Agreement, and may not be used by any Party to characterize, interpret, limit or affect otherwise any provision of this Agreement.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]**

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the date first above written.

SINOVAC BIOTECH LTD.

By: ______________________________
Name: Chiang Li
Title: Chairman of the Board

EQUINITI TRUST COMPANY, LLC, as Escrow Agent

By: ______________________________
Name:
Title:

SINOVAC BIOTECH LTD.

By: ______________________
Name: Chiang Li
Title: Chairman of the Board

EQUINITI TRUST COMPANY, LLC, as Escrow Agent

By: ______________________
Name: Michael Legregin
Title: Senior Vice President,
Corporate Actions, IPO & New Business

**Schedule A**

1. Escrow Funds.

| | |
|---|---|
| Total Escrow Funds amount: | $3,95[redacted] |
| Dividend Escrow Account | $3,30[redacted] |
| Disputed Dividend Escrow Account | $ 64[redacted] |
| Fees and Expenses Escrow Account | $ [redacted] |
| Escrow Funds wiring instructions: | JP MORGAN CHASE<br>NEW YORK, NY<br>ABA# [redacted]0021<br>A/C NAME: EQUINITI TRUST COMPANY, LLC<br>A/C #: [redacted]4624<br>REF (Sinovac Biotech Ltd.) |

2. Escrow Agent Fees.

| | |
|---|---|
| Acceptance Fee: | WAIVED |
| Annual Escrow Fee (including first year): | [redacted] per escrow account |
| Investment Management Fee | [redacted] |
| Out-of-Pocket Expenses: | Reasonably incurred |
| TOTAL DUE AT SIGNING | [redacted] |

In addition to the above Investment Management Fee, there will be a [redacted] basis point fee taken as a reduction to the investment yield.

The Acceptance Fee and the Annual Escrow Fee for each year of the term of this Agreement are payable upon execution of this Agreement. In the event the escrow is not funded, the Acceptance Fee and all related expenses, including attorneys' fees, costs and expenses remain due and payable, and if paid, will not be refunded. Annual fees cover a full year in advance, or any part thereof, and thus are not pro-rated in the year of termination.

The fees quoted in this schedule apply to services ordinarily rendered in the administration of an escrow account and are subject to reasonable adjustment based on final review of documents, or when the Escrow Agent is called upon to undertake unusual or extraordinary duties or responsibilities, or as changes in law, procedures, or the cost of doing business demand. Services in addition to and not contemplated in this Agreement, including document amendments and revisions, non-standard cash and/or investment transactions, calculations, notices and reports, and legal fees, will be billed as expenses.

Unless otherwise indicated, the above fees relate to the establishment of one escrow account. Additional sub-accounts governed by this Agreement may incur an additional charge. Transaction costs include charges for wire transfers, checks, internal transfers and securities transactions.

The fees quoted in this schedule are subject to reasonable adjustment by the Escrow Agent in accordance with its customary practices and if it is called upon to undertake further unusual or extraordinary duties or responsibilities, or as changes in law, procedures, or the cost of doing business demand.

3. Taxpayer Identification Numbers.

Company: ______________________________

4. Termination and Disbursement. Unless earlier terminated by the provisions of this Agreement, the Escrow Period will terminate on December 31, 2026 (the "Termination Date"). The Company shall have the right to require return of any Escrow Funds remaining in the escrow account on or prior to such date by delivering to the Escrow Agent a Written Direction, and any Escrow Funds remaining in the escrow account at such time shall be distributed in accordance with Section 4 of this Agreement and the Written Direction.

5. Investment Instructions.

| Fund Family | Fund Name | Share Class | Fund Nbr | Cusip |
|---|---|---|---|---|
| [redacted] | [redacted] | SELECT | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Capital | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Premier | [redacted] | [redacted] |
| [redacted] | [redacted] | Premier | [redacted] | [redacted] |

6. Company Representative. The following person is hereby designated and appointed to act on behalf of the Company under this Agreement:

Name: Dr. Chiang Li
c/o Sinovac Biotech Ltd.
No. 39 Shandi Xi Rd.,
Haidian District
Beijing 100085
People's Republic of China
Attn: Dr. Chiang Li, Chairman
Tel: [redacted]
Email: [redacted]

Specimen signature

7. Notice Addresses.

If to the Company at:

No. 39 Shandi Xi Rd.,
Haidian District
Beijing 100085
People's Republic of China
Attn: Dr. Chiang Li, Chairman
Tel: [redacted]
Email: [redacted]

have the right to require return of any Escrow Funds remaining in the escrow account on or prior to such date by delivering to the Escrow Agent a Written Direction, and any Escrow Funds remaining in the escrow account at such time shall be distributed in accordance with Section 4 of this Agreement and the Written Direction.

5. Investment Instructions.

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|
| [redacted] | [redacted] | SELECT | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Capital | [redacted] | [redacted] |
| [redacted] | [redacted] | Institutional | [redacted] | [redacted] |
| [redacted] | [redacted] | Premier | [redacted] | [redacted] |
| [redacted] | [redacted] | Premier | [redacted] | [redacted] |

6. Company Representative. The following person is hereby designated and appointed to act on behalf of the Company under this Agreement:

Name: Dr. Chiang Li
c/o Sinovac Biotech Ltd.
No. 39 Shandi Xi Rd.,
Haidian District
Beijing 100085
People's Republic of China
Attn: Dr. Chiang Li, Chairman
Tel: [redacted]
Email: [redacted]

Specimen signature

7. Notice Addresses.

If to the Company at:

No. 39 Shandi Xi Rd.,
Haidian District
Beijing 100085
People's Republic of China
Attn: Dr. Chiang Li, Chairman
Tel: [redacted]
Email: [redacted]

and

Attn: Helen Yang, Secretary
Email: [redacted]

with a copy (which shall not constitute notice) to:

Wilson Sonsini Goodrich & Rosati, P.C.
Suite 1509, 15/F Jardine House
1 Connaught Place
Central, Hong Kong
Attn: Weiheng Chen
Tel: [redacted]
Email: [redacted]

and

650 Page Mill Road
Palo Alto, California 94304
Attn: Steven Bernard
Tel: [redacted]
Email: [redacted]

If to Escrow Agent at:

Equiniti Trust Company, LLC
48 Wall Street, 22nd Floor
New York, NY 10005
Attn: Corporate Actions
Tel: [redacted]

with copy to:

Equiniti Trust Company, LLC
48 Wall Street, 22nd Floor
New York, NY 10005
Attention: Legal Department
Email: [redacted]

8. Designated Email Accounts and Telephone Call-Back Numbers (for persons designated to send and receive notices by e-mail).

| | Name | Email Address | Phone |
|---|---|---|---|
| Company: | Dr. Chiang Li | [redacted] | [redacted] |
| Escrow Agent: | David Barker<br>Keith Morales | [redacted] | [redacted] |